# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ANDRE TODD,<br><br>  Plaintiff,<br><br>  v.<br><br>ANTHONY L. HEDGPETH, et al.,<br><br>  Defendants. | Case No. 1:08-cv-01504-SAB (PC)<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>ORDER DENYING PLAINTIFF'S MOTION TO FILE AN AMENDED OPPOSITION TO SUMMARY JUDMGNET AS MOOT<br><br>ORDER DENYING DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S SURREPLY AS MOOT<br><br>(ECF Nos. 65, 76, & 81) |

## I.

## PROCEDURAL HISTORY

Plaintiff Michael Andre Todd ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on October 6, 2008. This action is proceeding against Defendants R. Keldgord, S. Lopez, A. Hedgpeth, and N. Dill on Plaintiff's Eighth Amendment claim for deliberate indifference. Plaintiff's claim arises out of his lack of medical treatment following a knee surgery in May 2007.

On May 2, 2012, Defendants filed a motion for summary judgment. (ECF No. 65.) On May 22, 2012, Plaintiff filed an opposition. (ECF No. 68.) On May 29, 2012, Defendants filed a

1  reply.  (ECF No. 73.)  On June 22, 2012, Plaintiff filed a surreply.  (ECF No. 74.)  On July 2,
2  2012, Defendants filed a motion to strike Plaintiff's surreply.  On August 9, 2012, the Court
3  issued an order permitting Plaintiff opportunity to withdraw his opposition and file an amended
4  opposition in light of Woods v. Carey, 684 F.3d 934 (9th Cir. 2012).  (ECF No. 78.)  On
5  September 4, 2012, Plaintiff filed a motion to withdraw his previous opposition.  (ECF No. 81.)
6  On September 4, 2012, Plaintiff also filed an amended opposition.  (ECF No. 82.)  On October 2,
7  2012, Defendants submitted a reply.  (ECF No. 88.)  Defendants' motion for summary judgment
8  has been submitted upon the record, and this order now issues.  Local Rule 230(*l*).

## II.

## LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Wash. Mut. Inc. v. United States, 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the record not cited to by the parties, although it is not required to do so.  Fed. R. Civ. P. 56(c)(3); Carmen v. S.F. Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).

Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case.  In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986)).  If Defendants meet their initial burden, the burden then shifts to Plaintiff

"to designate specific facts demonstrating the existence of genuine issues for trial." In re Oracle Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 323). This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505 (1986)).

However, in judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment. Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011), cert. denied, 132 S. Ct. 1566 (quotation marks and citation omitted). The Court determines only whether there is a genuine issue for trial and in doing so, it must liberally construe Plaintiff's filings because he is a pro se prisoner. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

### III.

### SUMMARY OF POSITIONS

**A.   Plaintiff's Allegations[1]**

Plaintiff alleges that his Eighth Amendment rights were violated when Defendants acted with deliberate indifference to his serious medical needs. Plaintiff submitted several medical requests for help because he had severe pain and discomfort in his right knee. Plaintiff's requests for help were unanswered for months. On March 21, 2007, Plaintiff was finally able to see a physician for his knee. The physician recommended that Plaintiff receive an MRI on his right knee. The physician noted that Plaintiff had "chondromalacia of the patella, along with

---

[1] Plaintiff's amended complaint is verified and therefore, it is treated as an opposing declaration to the extent it is based on Plaintiff's personal knowledge of specific facts which are admissible in evidence. Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004).

synovitis of the right knee and tearing of the medical meniscus and tearing at the anterior horn of the lateral meniscus."

On May 7, 2007, a surgeon performed a procedure to repair Plaintiff's right knee at Tehachapi Surgery Center. The surgeon recommended that Plaintiff was to be provided with: 1) ACL orthopedic stabilizing right knee brace; and 2) physical therapy to strengthen, rehabilitate and condition Plaintiff's knee. Plaintiff alleges that Defendants failed to provide Plaintiff with this medical treatment for sixteen months following his operation. Plaintiff experienced severe pain and suffering that significantly altered Plaintiff's quality of life. Plaintiff also re-injured his knee several times during this sixteen month period as a result of not being provided an ACL orthopedic stabilizing knee brace.

On December 9, 2007, Plaintiff filed a CDC #1824 reasonable modification or accommodation request to inform Kern Valley State Prison ("KVSP") medical staff and place them on notice of their negligence to provide medical care. On December 17, 2007, Plaintiff wrote letters to Defendants Dill and Kelgord, to inform them and place them on notice of the denial of his medical treatment. Defendants Dill and Kelgord did not respond to Plaintiff's requests for medical assistance. On March 18, 2008, Plaintiff wrote letters to Defendants Hedgpeth and Lopez to request medical treatment and inform them and place them on notice of the denial of his medical treatment. Defendants refused to provide the proscribed knee brace and physical therapy to Plaintiff. As a result, Plaintiff experienced constant pain and suffering and was unable to walk or engage in physical exercise.

### B. **Undisputed Facts**

1. Plaintiff was an Inmate at Kern Valley State Prison on May 30, 2007, when he was transported to Tehachapi Medical Clinic to receive surgery to his right knee. Exhibit A: Deposition of Plaintiff TODD, Page 13, lines 4-9. Declaration of Defendant LOPEZ, Paragraph 4.

2. On the date of the surgery, the Surgeon from Tehachapi Medical Clinic, Dr. Lewis, requested that the California Department of Corrections and Rehabilitation provide Plaintiff with a knee brace. Exhibit B: Physician Request for Services. Declaration of Defendant LOPEZ, Paragraph 5.

///

3.     Plaintiff TODD was given a pull-over brace in March or April of 2010 while at California State Prison, Sacramento. Exhibit A: Deposition of Plaintiff TODD, Page 51, lines 3-8.

4.     On December 9, 2007, Plaintiff filed a CDC 1824 form requesting medical care post-surgery; an ACL knee brace and Physical Therapy, which began the administrative remedies process at the Institution. Exhibit C: CDC 1824 dated December 9, 2007. Exhibit A: Deposition of Plaintiff TODD, Page 21, lines 2-11. Declaration of Defendant KELDGORD, Paragraph 3.; Declaration of Defendant LOPEZ, Paragraph 6.

5.     On December 17, 2007, Plaintiff wrote a letter to Defendants Kelgord and Dill, requesting that he be allowed to continue physical therapy, and requesting a knee brace with stabilization. Exhibit D: Correspondence from Plaintiff dated December 17, 2007.

6.     On February 5, 2008, Plaintiff was seen by an Orthopedist at Pacific Orthopedic Medical Group in Bakersfield. Exhibit A: Deposition of Plaintiff TODD, Page 26, lines 3-10.

7.     Beginning August 21, 2008, Plaintiff was seen by a Physical Therapist, approximately five times in Bakersfield, California. Exhibit A: Deposition of Plaintiff TODD, Page 32, lines 4-25. Exhibit A: Deposition of Plaintiff TODD, Page 51, lines 14-23.

8.     On October 6, 2008, Plaintiff files his Complaint in the Eastern District. ECF No. 1.

9.     On October 13, 2009, Plaintiff presented with a wraparound neoprene brace, was measured for a new brace, but indicated he wanted to wait until after his upcoming MRI. Exhibit 0: Physician Request dated October 13, 2009. Declaration of Defendant LOPEZ, Paragraph 19.

10.     On October 28, 2009, Plaintiff had an MRI of his right knee. Conclusion: Normal Study. Exhibit P: Salinas Valley Radiologists, GRP MR RIGHT KNEE, dated October 28, 2009. Declaration of Defendant LOPEZ, Paragraph 20.

### C.    Summary of Defendants' Motion for Summary Judgment

Defendants present five main arguments in their motion for summary judgment: 1) Defendants Lopez, Keldgord, Dill, and Hedgpeth cannot be held liable simply because they oversee aspects of KVSP where Plaintiff was incarcerated; 2) Defendants Lopez, Keldgord, Dill, and Hedgpeth cannot be held liable because they did not act with deliberate indifference to Plaintiff's serious medical needs; 3) Defendants did not cause any delay in Plaintiff's treatment, nor was there any delay that was harmful to Plaintiff; 4) Plaintiff likely cannot prove deliberate indifference to his medical needs by these defendants; and 5) Defendants are entitled to qualified

immunity for these actions as a reasonable person in their position would not have believed their conduct violated clearly established law.  Memo. of P.&A. in Supp. of Defs' Mot. Summ. J. at 1-15, ECF No. 65-1.

### D. Summary of Plaintiff's Amended Opposition

Plaintiff argues that Defendants are not entitled to summary judgment because material issues of fact exist as to whether Defendants acted with deliberate indifference to Plaintiff's serious medical needs.  Plaintiff argues that Defendants are under a different opinion of the standards for treatment of post-knee surgery.  Plaintiff submits a list of disputed material facts and argues that they create material issues of fact that preclude summary judgment on all claims.  Additionally, Plaintiff argues that additional discovery will "establish/flush out" details of the parties' competing version of the events and the facts supporting Defendants' arguments.[2]

## IV.

## DISCUSSION

### A. Supervisory Liability

Defendants first argue they are entitled to summary judgment because there is no affirmative link between Defendants actions and Plaintiff's alleged injury.  Under section 1983, Plaintiff must link the named defendants to the participation in the violation at issue.  Iqbal, 556 U.S. at 676-77, 129 S. Ct. at 1948-49; Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  Liability may not be imposed on supervisory personnel under the theory of respondeat superior, Iqbal, 556 U.S. at 676-77, 129 S. Ct. at 1948-49; Simmons, 609 F.3d at 1020-21; Ewing, 588 F.3d at 1235; Jones, 297 F.3d at 934, and as administrators, Defendants  may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them," Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011), cert.

---

[2] The Court denied Plaintiff's motion to reopen discovery for a second time on July 10, 2013.  (ECF No. 91.)

denied, 132 S. Ct. 2101 (2012); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997).  Some culpable action or inaction must be attributable to Defendants and while the creation or enforcement of, or acquiescence in, an unconstitutional policy, may support a claim, the policy must have been the moving force behind the violation.  Starr, 652 F.3d at 1205; Jeffers v. Gomez, 267 F.3d 895, 914-15 (9th Cir. 2001); Redman v. Cnty. of San Diego, 942 F.2d 1435, 1446-47 (9th Cir. 1991); Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989).

At the summary judgment stage and under Ninth Circuit precedent, Plaintiff's submission of letters to prison officials is sufficient to establish material issues of fact as to whether Defendants were aware of a constitutional violation and failed to act.  Jett v. Penner, 439 F.3d 1091, 1098 (9th Cir. 2006); see Moore v. Jackson, 123 F.3d 1082, 1087 (8th Cir. 1997).  In Jet, the Ninth Circuit held that the magistrate incorrectly determined that Plaintiff had not submitted sufficient evidence to establish a genuine issue of material fact as to whether defendants were deliberately indifferent to the plaintiff's serious medical needs.  Id.  As prison administrators, defendants are liable for deliberate indifference when the knowingly fail to respond to an inmate's request for help.  Id.  Prison officials advised in their interrogatories that they were not aware of the plaintiff's condition until the lawsuit.  Id.  Plaintiff submitted evidence that he swore he sent the letters to defendants to put them on notice of his condition.  Id.  The court held that plaintiff was "entitled to an inference at the summary judgment stage that [defendants] received the letters he swore he sent to them." Id.

Here, the issue is whether Plaintiff has submitted sufficient evidence to show that Defendants were aware of his need for medical care and failed to act.  This case is analogous to Jett, and thus, material issues of fact exist as to whether Defendants knew of the constitutional

violations and failed to act to prevent them. Although Defendants held supervisory positions at KVSP and were not personally involved in Plaintiff's day-to-day care, Plaintiff has submitted sufficient evidence to show that Defendants were on notice of his serious need for medical care. Defendants submit in their affidavits that they do not remember receiving any letters from Plaintiff and that this type of grievance would have been forwarded through to proper channels at the prison. Kelgord Decl. ¶ 4-6 (ECF No. 65 at 20); Dill Decl ¶ 5 (ECF No. 65 at 21); Lopez Decl. ¶ 12 (ECF No. 165 at 18). To rebut Defendants' evidence that they never received the letters, Plaintiff submits dated copies of the letters he sent to Defendants on December 17, 2007 (addressed to Defendants Kelgord and Dill) and on March 18, 2008 (addressed to Defendants Lopez and Hedgpeth). Pl's Am. Opp'n, Exs. C & I  (ECF No. 82 at 29-30, 48-51). In accordance with Jett, the Court finds that Plaintiff's evidence is sufficient at the summary judgment stage to create material issues of fact as to whether Defendants were on notice of his medical condition and failed to act.

### B.     **Deliberate Indifference to Serious Medical Needs**

####    1.     **Eighth Amendment Legal Standard**

Next, Defendants argue they are entitled to summary judgment because Plaintiff has failed to show that they acted with deliberate indifference to his serious medical needs. To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). In order to be held liable, each defendant must have personally participated in the deprivation of the plaintiff's rights. Ashcroft v. Iqbal, 556 U.S. 662, 677, 129 S. Ct. 1937, 1949 (2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  A prisoner's claim does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'" Toguchi v. Chung, 391 F.3d 1051, 1057

1  (9th Cir. 2004) (quoting Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)).
2  In order to find a prison official liable under the Eighth Amendment for denying humane
3  conditions of confinement within a prison, the official must know "that inmates face a substantial
4  risk of serious harm and disregard[] that risk by failing to take reasonable measures to abate it."
5  Farmer v. Brennan, 511 U.S. 825, 847 (1994).

6        To maintain an Eighth Amendment claim based on prison medical treatment, an inmate
7  must show (1) a serious medical need by demonstrating that failure to treat a prisoner's condition
8  could result in further significant injury or the unnecessary and wanton infliction of pain, and (2)
9  a deliberately indifferent response by defendant. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir.
10 2006). The deliberate indifference standard is met by showing (a) a purposeful act or failure to
11 respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference.
12 Id.

13       The failure to respond to a prisoner's complaints of pain can be sufficient to support an
14 Eighth Amendment claim. Snow v. McDaniel, 681 F.3d 978, 990 (9th Cir. 2012); Clement v.
15 Gomez, 298 F.3d 898, 904 (9th Cir. 2002). However, deliberate indifference must be shown and
16 it is a high legal standard. Toguchi, 391 F.3d at 1060 (quotation marks omitted). "Under this
17 standard, the prison official must not only 'be aware of the facts from which the inference could
18 be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the
19 inference.'" Id. at 1057 (quoting Farmer, 511 U.S. at 837). "'If a prison official should have
20 been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no
21 matter how severe the risk.'" Id. (quoting Gibson v. Cnty. of Washoe, Nev., 290 F.3d 1175,
22 1188 (9th Cir. 2002)).

23       In applying this standard, the Ninth Circuit has held that before it can be said that a
24 prisoner's civil rights have been abridged, "the indifference to his medical needs must be
25 substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause
26 of action." Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980), citing Estelle, 429 U.S.
27 at 105-06. "[A] complaint that a physician has been negligent in diagnosing or treating a
28 medical condition does not state a valid claim of medical mistreatment under the Eighth

Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; see also Anderson v. Cnty. of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995); McGuckin v. Smith, 974 F.2d 1050, 1050 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997)(en banc). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990). A prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

### 2. **Findings**

#### a. **Objective Component—Existence of a Serious Medical Need**

Defendants first argue that Plaintiff did not have an objectively serious medical need. To meet the objective element, Plaintiff must show that the denial of care resulted "in the 'unnecessary and wanton infliction of pain.'" Snow, 681 F.3d at 985 (quoting Estelle v. Gamble, 429 U.S. 97, 104, 106, 97 S. Ct. 285 (1977)). Indications of a serious medical need are the existence of an injury that a reasonable doctor would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities, and the existence of chronic or substantial pain. Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (citation omitted); accord Wilhelm, 680 F.3d at 1122.

Defendants do not support their position with any medical evidence upon which the Court might rely for the proposition that Plaintiff's knee condition did not constitute a serious medical need. Notably, the record is devoid of any expert witness's analysis of Plaintiff's knee condition. On the contrary, Defendant Lopez stated in his declaration that Plaintiff was a prisoner who would have benefitted from physical therapy. Lopez Decl. ¶ 14 (ECF No. 65 at 19). It is clear from Plaintiff's medical records that his knee condition merited, in the opinion of outside medical staff, some type of additional physical therapy post-December 2007.

Given that the issue was documented in Plaintiff's medical records, additional physical therapy was recommended, and the issue allegedly caused Plaintiff severe, chronic pain, there exists evidence upon which a trier of fact might find that Plaintiff's condition was one which (1)

a reasonable doctor would find important and worthy of comment or treatment, and/or (2) caused Plaintiff chronic and/or substantial pain. Lopez, 203 F.3d at 1131; Wilhelm, 680 F.3d at 1122. At a minimum, there exists a triable issue of fact regarding whether Plaintiff's knee condition constituted a serious medical need. As a result, Defendants are not entitled to judgment as a matter of law on the objective element of Plaintiff's Eighth Amendment claim.

### b. Harm

The Court next turns to Defendants' argument that there is no evidence that the delay in treatment caused Plaintiff any further harm. The further harm suffered need not be substantial. Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096).

The record is replete with evidence, which at this stage must be accepted as true and which may not be subject to weight or credibility assessments, that Plaintiff's untreated leg condition caused him chronic, substantial pain. The wanton, unnecessary infliction of pain constitutes harm, Snow, 681 F.3d at 985, and a lengthy delay in treatment which causes an inmate to unnecessarily suffer pain is unquestionably harm within the meaning of the Eighth Amendment, Snow, 681 F.3d at 987; Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002). Accordingly, material issues of fact exist as to whether Defendants' action to delay Plaintiff's treatment caused him harm.

### c. Subjective Component

Defendants argue that they did not act with deliberate indifference toward Plaintiff's medical needs. Defendants first argue that Plaintiff's claim fails on the subjective component because they never received Plaintiff's letters and therefore were not aware of his health condition. As discussed above, Plaintiff is entitled to the inference at summary judgment stage that Defendants received his letters requesting medical treatment. As such, the issue is whether, assuming Defendants received Plaintiff's letters, Defendants' actions or inaction constituted deliberate indifference to a serious medical need.

Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective

recklessness, which entails more than ordinary lack of due care. Snow, 681 F.3d at 985 (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122. "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Toguchi, 391 F.3d at 1057 (quoting Farmer, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. Cnty. of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).

### i. Defendants Dill and Keldgord

On May 30, 2007, Plaintiff had surgery on his right knee at the Tehachapi Medical Clinic Plaintiff first notified Defendants Dill and Keldgord of his need for medical attention on December 17, 2007, when he sent them a letter. Pl's Am. Opp'n., Ex. C (ECF No. 82 at 29-30). Plaintiff's letter requested that he be able to *continue* physical therapy. Id. at 30. Although the record in unclear as to what physical therapy Plaintiff received prior to this date, Plaintiff's own letter suggests he had received at least some type of physical therapy prior to December 17, 2007. On January 2, 2008, sixteen days after Plaintiff sent the letter, Plaintiff's appeal is granted and he visited C. Moody for a consultation. Pl's Depos. at 21; ECF No. 82 at 21. C. Moody recommended that Plaintiff be evaluated for a knee brace. Id. On January 9, 2008, Plaintiff saw surgeon Lewis in Bakersfield, California for a follow-up visit. Defs' Ex. E. (ECF No. 65-1 at 17). Surgeon Lewis wrote in his report that Plaintiff would be placed in an anterior cruciate restraining brace. Id.

On January 17, 2008, a physician's progress note indicates that Plaintiff has an elastic brace but that Plaintiff requested an ACL brace. Defs' Ex. F. (ECF No. 65-1 at 18). On January 29, 2008, Plaintiff visited Dr. Patel at KVSP, who requested physical therapy for Plaintiff and indicated that it was urgent. Defs' Ex. G (ECF No. 65-1 at 19). On February 5, 2008, an orthopedist saw Plaintiff in Bakersfield. Pl's Depos. at 26 (ECF No. 65-1 at 4.) On February 5, 2008, Plaintiff also saw a physical therapist who recommended two physical therapy visits a

week for four weeks.  Defs' Ex. H (ECF No. 65-1 at 20.

The Court well appreciates Plaintiff's frustration given the overall wait for additional physical therapy.  However, the narrow question here is whether, in responding to Plaintiff's December 17, 2007 letter, and in light of the circumstances at that time, Defendants acted reasonably in response to Plaintiff's complaint of inadequate medical care.  The Court finds that they did.  Plaintiff's appeal for medical attention was granted sixteen days following the letter and Plaintiff saw M. Moody for a consultation on January 2, 2008.  Plaintiff continued to see various medical providers throughout the month of January and into February 2008.  Plaintiff does not allege that he ever notified Defendants Dill and Keldgord again that the medical treatment he was receiving was inadequate.  Accordingly, the Court finds that no material issues of fact exist whether Defendants Dill and Keldgord acted with deliberate indifference, and are therefore entitled to summary judgment as a matter of law.

### ii.     Defendants Lopez and Hedgpeth

On March 18, 2008, Plaintiff wrote letters to Defendants Lopez and Hedgpeth to notify them of his need for medical treatment.[3]  Pl's Am. Opp'n., Ex. I (ECF No. 82 at 48-51).  Following these letters, nothing in the record indicates that Plaintiff received any medical treatment for his knee until approximately five months later on August 21, 2008.  Beginning on that date, a physical therapist in Bakersfield saw Plaintiff approximately five times.  Pl's Depos. at 51 (ECF No. 65-1 at 9).  Plaintiff received physical therapy in Bakersfield because KVSP did not have a physical therapist on site during this time period and there was a waiting list with priority given to non-ambulatory inmates.  Pl's Depos. at 52 (ECF No. 65-1 at 10); Lopez Decl. ¶ 13 (ECF No. 65 at 18).  On September 15, 2008, the orthopedic consultant for CDCR, Trevor Townsend, finally responded to the January 29, 2008 recommendation by Dr. Patel for Plaintiff to receive an ACL knee brace.  Defs' Ex. K; (ECF No. 65-1 at 27).  Defendant Lopez acknowledged that there had been a "tremendous back log and problems with the contract between CDCR and this entity."  Lopez Decl. ¶ 15.  Plaintiff filed this lawsuit on October 6,

---

[3] Plaintiff's letters are specifically addressed to the "Warden," who was Defendant Hedgpeth and to the "Chief Medical Officer," who was Defendant Lopez.

13

2008. ECF No. 1.

Assuming Defendants Lopez and Hedgpeth received Plaintiff's letter requesting medical assistance, the Court finds that material issues of fact exist as to whether Defendants were deliberately indifferent to Plaintiff's serious medical needs. The recommendation for Plaintiff to receive physical therapy on January 29, 2008 was indicated as urgent. However, the record shows that Plaintiff received no medical treatment for his knee for approximately five months following his request for help from Defendants Lopez and Hedgpeth. Accordingly, the Court finds that material issues of fact exist as to whether Defendants Lopez and Hedgpeth acted with deliberate indifference to Plaintiff's serious medical needs.

### C.  Qualified Immunity—Defendants Lopez and Hedgpeth[4]

Next, Defendants argue that they are entitled to qualified immunity because they acted reasonably in light of clearly established law. The doctrine of qualified immunity protects government officials from civil liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To determine if an official is entitled to qualified immunity the court uses a two part inquiry. Saucier v. Katz, 533 U.S. 194, 200 (2001). The court determines if the facts as alleged state a violation of a constitutional right and if the right is clearly established so that a reasonable official would have known that his conduct was unlawful. Saucier, 533 U.S. at 200. A district court is "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 555 U.S. at 236. The inquiry as to whether the right was clearly established is "solely a question of law for the judge." Dunn v. Castro, 621 F.3d 1196, 1199 (9th Cir. 2010) (quoting Tortu v. Las Vegas Metro. Police Dep't. 556 F.3d 1075, 1085 (9th Cir. 2009)). In resolving the issue of qualified immunity, the court must view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor

---

[4] The Court need not address qualified immunity as to Defendants Dill and Kelgord in light of the fact that it finds summary judgment appropriate for these defendants.

1  of plaintiff. Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir.2003).

2  Under the first prong of the Saucier test, Defendants fail to prove that they did not violate
3  Plaintiff's Eighth Amendment rights. As discussed above, the Court has found that there is a
4  triable issue regarding whether Defendants Lopez and Hedgpeth violated Plaintiff's Eighth
5  Amendment rights. Thus, the second prong requires the Court to determine if the law was
6  clearly established at the time of the incident.

7  Under the second prong of the Saucier test, Defendants fail to prove that they did not
8  violate a clearly established right. A prisoner's right to medical care has long been established,
9  Estelle, 429 U.S. at 104-05, and by 2008, it was certainly clearly established that prison
10 administrators are deliberately indifferent when they knowingly fail to respond to an inmate's
11 requests for help, and a reasonable official would have known that he could not ignore or
12 disregard an inmate's claim that he was repeatedly being denied treatment prescribed for him by
13 a physician. Jett, 439 F.3d at 1098; Clement, 298 F.3d at 906. What the evidence will show
14 remains to be seen, but under the circumstances as alleged in the complaint, Defendants are not
15 entitled to qualified immunity at the summary judgment stage.

**V.**

**CONCLUSION AND ORDER**

In conclusion, the Court finds that 1) no material factual disputes exist as to Defendants Dill and Kelgord; and 2) that material issues of fact do exist as to Defendants Lopez and Hedgepth regarding whether they violated Plaintiff's Eighth Amendment rights. Accordingly,

IT IS HEREBY ORDERED that:

1. Defendants' motion for summary judgment, filed on October 12, 2011, be GRANTED as to Defendants Dill and Kelgord and DENIED as to Defendants Lopez and Hedgpeth;

2. Plaintiff's motion requesting to amend his opposition to summary judgment, filed on September 4, 2012, is DENIED as MOOT;

3. Defendants' motion to strike Plaintiff's surreply, filed on July 2, 2012, is DENIED as MOOT; and

4. Plaintiff's remaining Eighth Amendment claims against Defendants Lopez and Hedgpeth will be set for trial.

IT IS SO ORDERED.

Dated:   **August 23, 2013**

_____
UNITED STATES MAGISTRATE JUDGE

16